[No. 4612.]

FRANKLIN ET AL. v. BURRIS ET AL.

1. **Practice in Civil Actions—Motion for Nonsuit—Waiver.**

In an action for specific performance of a contract where defendants answered by affirmative defenses and cross-complaint, error, if any, in overruling defendants' motion for non-suit at the close of plaintiff's testimony on the grounds of variance between the evidence and the allegations in plaintiff's complaint, and the failure of plaintiff's proof to sustain the allegations, was waived by defendants proceeding with an attempt to establish the affirmative defenses and cross-complaint in their answer, and assignments of error based upon the overruling of such motion will not be considered by the appellate court.

2. **Pleading—Practice — Judgments — Contracts — Specific Performance.**

In an action to enforce specific performance of a contract to convey land, where defendants answered by affirmative defenses and cross-complaint wherein they alleged title in themselves and prayed that plaintiff and other parties brought in by the cross-complaint be adjudged to have no right or interest in the land and for general equitable relief, a decree finding against defendants on their cross-complaint and directing that upon the payment to defendants by one of the cross-defendants (who had succeeded to plaintiff's interest) of a certain sum, the defendants should convey to such cross-defendant all their rights or interests in the land, was warranted under the issues made by the pleading.

3. **Evidence—Decree.**

Evidence examined and held to justify the decree.

*Appeal from the District Court of El Paso County. Hon. Louis W. Cunningham, Judge.*

Mr. CHARLES J. HUGHES, Jr., Mr. F. L. SHAW and Mr. R. G. WITHERS, for appellants.

Mr. A. W. RUCKER and Mr. J. C. HELM, for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Appellants, who were defendants below, seek the overthrow of a decree which determined that the

mining property to which the opposing parties make claim belongs to plaintiff's grantee, and not to defendants. They assign many grounds for error which are without merit. There is only one assignment which, even at first blush, might be called fairly debatable, but which, on careful examination, will be found to be untenable. In our view, this assignment, if decided in favor of appellees' contention, establishes the correctness of the decree, irrespective of the merits of all the others. To a full understanding of the question it raises, a somewhat detailed statement of the contents of the voluminous pleadings will materially contribute.

Mattie B. Burris, as the assignee of her husband, William M. Burris, brought this action as the sole plaintiff against the defendants as heirs at law of Benjamin Franklin, deceased, to compel a conveyance of certain mining property in accordance with the requirements of a contract therefor which was entered into between Benjamin Franklin and plaintiff's assignor. The complaint is in the ordinary form for specific performance, alleging the contract, the performance by plaintiff, and non-performance by defendants, of the conditions thereby imposed upon them respectively.

To this complaint the defendants filed an answer of which the first defense denied that their ancestor ever made the contract pleaded in the complaint, and alleged that in June, 1898, he and William M. Burris did enter into a contract different from the one set out in the complaint concerning the same mining property whereby, among other things, Franklin agreed to convey it to Burris whenever the latter paid to the former the sum of $5,000; that this contract never was performed by either of the immediate parties thereto, or their successors or representatives.

33

As a second defense, defendants say that thereafter, and in February, 1899, Burris and Franklin, the parties to the first contract, concluded to abandon it and, with the full knowledge and consent and at the instance of William M. Burris, Franklin and plaintiff herein, the wife of William M. Burris, entered into a new and distinct contract, called, in the record, the second contract, which was intended to, and did abrogate the first, and into which all rights of either party to the first were merged; that in the second contract it was provided, among other things, that Franklin would convey all of his rights and interests in the mining property to the plaintiff upon the payment by the latter of certain sums of money, as therein specified; that plaintiff has never complied with any of its terms to be by her performed as a condition precedent to the conveying of the property by Franklin, and, by reason thereof, the same has become forfeited. And, by reason of the matters set forth in these two defenses, defendants ask that plaintiff's action be dismissed.

For a third and separate defense, and by way of a cross-complaint, defendants allege the making of the first contract between plaintiff's assignor, William M. Burris, and their ancestor, Benjamin Franklin, which was never performed, the abandonment thereof, and the execution of the second contract, as previously described in this statement. That under the second contract William M. Burris entered into possession of the mining property as a tenant of Benjamin Franklin, and ever since has been in such possession and paid rent therefor; that neither William M. Burris nor the plaintiff herein has ever performed the conditions of either the first or the second contract which were by them to be performed as conditions precedent to the conveyance by Benjamin Franklin, but, in disregard of the rights of de-

fendants and their ancestor William M. Burris, while in possession of the property as such tenant, obtained from the record owners of the property in dispute a deed therefor running to Mattie B. Burris, as sole grantee, and that Mattie B. Burris afterwards sold, or pretended to sell, such interest, so acquired, to The El Paso Gold Mining Company, which company then knew of defendants' rights. That prior to the commencement of this action, but after the execution of the deed to the mining company, defendants themselves, claiming to be entitled to receive conveyances from the record owners upon making certain payments, tendered the same to such owners and made demand for such conveyance, which was refused. Defendants, upon this cross-complaint, asked that William M. Burris and the El Paso company be made parties to the action, and that, upon the final hearing they, the defendants, be decreed to be the owners, and entitled to possession, and placed in possession of the mining claims, and that the plaintiff, the El Paso company and William M. Burris, be adjudged to have no right or interest therein; and during the pendency of the action asked for a temporary writ of injunction and a receiver to preserve the property, and for such other and different relief, temporary and permanent, as the court may deem proper.

William M. Burris and the mining company were ordered to be brought in to plead, and did plead, to the cross-complaint. Burris filed a disclaimer, in which he stated that before the action was begun, he had parted with all of his rights to plaintiff, and now claimed no interest whatever to the properties in dispute or the subject-matter of the litigation. The plaintiff, Mattie B. Burris and the El Paso company each filed a separate pleading which, in substance, was the same, to the amended

answer and cross-complaint of defendants, and this pleading was in the nature of a replication to the affirmative matters set up in the first and second defenses of defendants' answer, and an answer to their cross-complaint. These pleadings of plaintiff and the El Paso company contained some admissions and some denials of defendants' pleading. The continued existence and binding force of the first contract set up by the plaintiff in the complaint, were therein averred, and there was an allegation that the second contract was not intended to, and did not, supplant the first, and that plaintiff had not made performance under either. In paragraph 11 of plaintiffs' combined replication and answer, there are affirmative allegations that all of the rights and interests which Benjamin Franklin or these defendants ever had to the mining property in dispute was the result of a sheriff's sale under an execution issued on a judgment recovered by William M. Burris against The Little May Gold Mining Company, and that the sole consideration at such sale was the amount due William M. Burris on his judgment; that Benjamin Franklin was not a bidder at said sale, did not thereat pay any sum in cash, or in any other manner, or at any other time, but that Burris bid in the property in the name of Franklin and paid the entire consideration therefor.

To the answer to the cross-complaint the defendants filed replications, but, as they are not reproduced in the abstract, we may presume that they contain nothing material so far as concerns the questions involved in this appeal.

At the close of the plaintiff's case the defendants, while reserving the right allowed by the court to introduce evidence in case their motion was not sustained, moved for a nonsuit upon various grounds, among which were that the plaintiff had

not made out a case for specific performance, and that there was a variance between the allegations of the complaint and the proof. The court reserved a ruling upon this motion, whereupon the defendants at once proceeded to introduce evidence in their own behalf which was followed by evidence in behalf of plaintiff. Upon the evidence thus produced, and under the issues as already stated, the court made special findings in favor of the plaintiff in the action, and decreed that, upon the payment into court for the benefit of defendants of $15,000 by the El Paso company, deeds should be made by the defendants to such company, conveying to it all of defendants' rights or interests in the mining property. The court specifically found that the first contract was annulled and superseded by the second; that the sole consideration for the certificate of purchase issued pursuant to the sheriff's sale, more fully described in the opinion under which the defendants' ancestor acquired whatever rights he had in and to the subject-matter of this litigation, and the sole consideration for the sheriff's deed thereafter executed upon this sale and upon which the defendants, as cross-complainants, through their second contract, base their entire claim of right, was the bid of the judgment debt due William M. Burris, and which Burris made at the sale; that the certificate was issued in the name of Benjamin Franklin, at the direction of Burris; that Franklin paid nothing in cash, or otherwise, therefor; that at no time was Franklin the absolute owner of the interest which William M. Burris acquired, and which afterwards was assigned by him to his wife, Mattie B. Burris, in and to what is called the Ford-Anderson contract, also described later on, which gave to Burris and his assignees, and which defendants claim they owned, the mere option to acquire the title to these mining properties upon

the payment of certain sums of money. The court further, however, held that, by virtue of the second contract, Benjamin Franklin and his heirs at law became and now are entitled in equity to receive from Mattie B. Burris, the other party to the contract, or from the owners of the property, the sum of $15,000 mentioned therein as the consideration for the purchase by her from Franklin of the property in question, and that this amount should be made a lien upon the same.

1. Under the one assignment of error already adverted to, a large part of defendants' briefs is directed against what they call the flagrant error of the trial court in disregarding entirely the issues made by the pleadings, and determining the controversy upon the assumed equities of the litigants, which none of them had set forth in the pleadings, and which, since they were entirely outside the issues, it was beyond the jurisdiction of the court to settle. It is said, first, that the written contract introduced by plaintiff as proof of the allegation in her complaint of the contract declared on, was a material variance from such allegation; and because of such variance and plaintiff's failure to show performance by her before the action was begun, a nonsuit should have been granted.

With reference to this and kindred contentions of appellants, it is sufficient merely to say that, under the facts disclosed by this record, they are not entitled to avail themselves of the point even if, under other conditions and in other circumstances, there was any merit in it. If the defendants wished to rely upon plaintiff's alleged lack of proof of her own case, or the variance referred to, they should not have proceeded, as they did, with an attempt to establish the affirmative defenses and the cross-complaint of their answer. Doubtless defendants elected

wisely not to be content with a trial solely under the issues raised by the complaint and the responsive defenses of the answer. As the legal title of the property was in the mining company, they naturally wanted to have the conflicting rights of the parties thereto settled, and so they, themselves, invoked the jurisdiction of the court to try the new issues which they had tendered. By so doing they waived error, if any, in the ruling on the nonsuit, and they are not entitled to be heard except as to matters connected with the trial of the issues raised by the amended answer and cross-complaint and the subsequent pleadings. If the evidence under these issues justifies the decree which was rendered, certainly the issues created by the pleadings are such as to warrant the admission of the evidence and the rendering of a decree such as was entered. *W. Va. O. & O. L. Co. v. Vinol,* 14 W. Va. 638, is an authority fully sustaining our conclusion that the pleadings in this case warranted the findings and decree in the case at bar. Indeed, in that case the court went much further than we are required to do in the case before us in upholding the action of the trial court. We shall therefore assume—although, if it were necessary to decide the question, there might be some doubt about it—that the court correctly held that the first contract was superseded by the second; at all events, defendants are bound by their pleading that such merger was effected, and as we are clear that the application for a nonsuit was rightly denied, and for the reasons already assigned, we shall proceed to a disposition of the case as if the defendants themselves, as plaintiffs, had brought this action for the purpose of having their title to the property in dispute adjudicated.

Naturally the first inquiry, which has already been answered, is: Are the issues made by the

amended answer and cross-complaint and the subsequent pleadings broad enough to justify the character of the decree which was rendered? The decree in form requires defendants to convey all of their interest in the mining property to the El Paso company, which has succeeded to the rights of the plaintiff, upon the payment by the company to the defendants of $15,000. This decree is justified by defendants' own pleading, which has already been summarized. That is the construction which they themselves placed upon that pleading when they asked that they be declared to be the owners of the property, and that plaintiff and the El Paso company be decreed to have no right or interest therein.

To make the point, if possible, more clear, as well as to show the correctness of the court's findings, we shall set forth the situation of the parties and the surrounding circumstances during the time of the various transactions between them. Neither William M. Burris nor his wife, as assignee (until she received her deed), nor Benjamin Franklin, the ancestor of the defendants, ever had any legal title whatever to this mining property. The inception of the right, which the respective parties assert, so far as the questions here are concerned, arose out of, and was created by, a contract between William M. Burris and the Fords and Anderson, who were the legal owners of the property, whereby, in consideration of the payment of a stipulated sum of money, William M. Burris should have the right to a conveyance. In connection with this option Burris was given a lease upon the property, and entered into possession thereunder. This lease and the option to purchase Burris afterwards assigned to the Little May mining company. While this property was being worked under the lease, certain indebtedness was incurred for which mechanics' liens were filed,

one of, which claims therefor was owned by Benjamin Franklin, and the others were assigned to him so that he might enforce all in one suit. In the proceeding to enforce these liens by Franklin and against Burris and the Little May mining company, a decree of sale was entered and a sale duly made, and at the sale the property levied on, which consisted of the leasehold estate and the option to buy, already mentioned, was bid in by Benjamin Franklin for the amount of the judgment, and sheriff's deed was subsequently secured.

Assuming, because the parties themselves have apparently done so, but not deciding, that such an option as this is subject to sale on execution, it appears that whatever right Franklin obtained at the sheriff's sale, so far as affects the pending action, was the option to buy which Burris originally obtained from the Fords and Anderson. It was upon the supposed rights which Franklin obtained at this sale that the first contract was made between him and Burris. Because no substantial right was acquired at this sale, or on account of indefiniteness in the contract with respect to the time within which Burris might pay the consideration and receive from Franklin a deed of his interest in the property, or for some other reason which, in any event, is not of much importance here, the parties concluded to annul the first contract. And so, after what is called the second sheriff's sale, adverted to later, occurred, and based thereupon, the second contract was entered into, supplanting the first.

After the first contract was made, and while the property was being worked under the lease assigned by Burris to The Little May Gold Mining Company, the company became indebted to Burris, who was, at one time, its manager. He brought suit upon the debt, obtained a judgment, and, at the execution sale

thereunder, bid the amount of his judgment, and the certificate of purchase was issued at his instance in the name of Benjamin Franklin, and, after the beginning of this action, the deed for the same was acquired by these defendants. As we have just said, it was upon the rights, if any, thus acquired by Franklin at the second sheriff's sale that the second contract, which forms the sole basis for whatever claim the defendants have to this property, was executed.

The facts which we have just related are not in serious conflict. At least, the evidence tended to establish them, and the court found that they existed. The court specifically found that Burris himself bid in the property at the second sheriff's sale, and the amount of the judgment which he recovered was the bid which was made; that Franklin paid no part of the consideration therefor in any manner whatever, and the evidence tended to show that the reason Burris had the certificate of sale issued in Franklin's name was by way of security to Franklin and to the others interested in the judgment which he had recovered, and under which the first sheriff's sale was made. At all events, the court found, and the evidence supports the finding, that the sole consideration for the second sale was the amount of the judgment which Burris obtained against the Little May mining company, and which at the time he owned absolutely. All of these rights, as we have said, which Burris had in and to this property, were assigned to Mrs. Burris.

The evidence also tends to show that Mrs. Burris and her husband, who seemed to be acting as her agent, considered that whatever rights Franklin had under these various contracts were merely in the nature of a security, and that in equity the rights belonged to the plaintiff herein, and so, after the

expiration of the option which William M. Burris originally secured from the Fords and Anderson, he got a new offer of sale from them, and the plaintiff herein, as his assignee, accepted it, complied therewith by paying the consideration named, received the deed of conveyance from the owners, and afterwards conveyed to the El Paso company.

If the questions determined by the trial court and the equities thus ascertained are within the issues raised by the pleadings, as they unquestionably are, there can be no doubt whatever, in the light of the foregoing summary of the evidence upon which the findings of the court were made, that the decree is fully justified. We have decided that the evidence was within, and responsive to, the issues, and are thoroughly satisfied that the decree accords with good practice. If the trial court committed prejudicial error in this case, in any of its phases, it was against plaintiff, and not against defendants. Defendants themselves introduced in their pleadings, and relied upon, and claimed to be the equitable owner of the property in question, under the second contract. They asked the court to make a decree adjudging them to be the owners. Had the court found from the evidence that such equities were with the defendants and rendered a decree in accordance with their prayer, certainly the defendants would not be here complaining that the pleadings were ignored. When, however, the trial court found against them upon the very issues which they tendered, and rendered a decree, not such as they prayed, but one in favor of the plaintiff and the El Paso company, we fail to see how defendants possibly can say, if the evidence is sufficient, that the trial was of matters outside the issues. The form in which the decree is cast is not material. Equity looks to the substance, and not the form. In view of the fact that the legal title was in

the name of the El Paso company, the decree might merely have quieted title in them; or, it might have enjoined defendants from thereafter setting up, or claiming, any title to the property; or, it might have canceled defendants' alleged equities under the second contract. But, by the decree which was rendered, viz., that the defendants should, by deed, convey to the El Paso company, upon the payment of the sum of $15,000, all the right, title and interest which they might have in the property, the same result was substantially accomplished—that is, the decree being that the El Paso company, and not the defendants, were the owners and entitled to the possession of the property, it was entirely proper that effect thereto be given by requiring defendants to give up their claims by deeding to the true owner.

We repeat that a careful examination of the record satisfies us that, if any injustice was done, it was to the plaintiff, and not to the defendants; but as plaintiff has not assigned cross-errors, but is content with the decree as rendered, she is not in a position to complain. We have not deemed it important or necessary to consider the various other questions which have been elaborately argued by counsel in their briefs. We may say, however, that other considerations occur to us why the defendants have no cause of complaint, and there are other substantial reasons to our mind why the decree should be affirmed. But, in view of the findings of the court upon which its decree was rendered, and which seem to us to have been abundantly supported by the evidence and warranted by the issues made by the pleadings, we have concluded not to prolong the opinion by what, in the circumstances, would be an unnecessary discussion.

The decree of the lower court is right, and it should be affirmed.                                  *Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.